Eloise **LOCKHART**, Plaintiff,

v.

Louis W. **SULLIVAN**, M.D., Secretary D.H.H.S.; Otis R. Bowen, M.D.,; Francis J. O'Byrne, individually and as A.L. J.I.C., D.H.H.S., OHA; Michael Bernstein, individually and as Supervisory Attorney–Advisor, D.H.H.S., OHA; and Other Unknown Agents, D.H.H.S., Defendants.

No. 89 C 1226.

United States District Court, N.D. Illinois, E.D.

Sept. 6, 1989.

Eloise Lockhart, Dallas, Tex., pro se.

Frederick Branding, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Eloise Lockhart is a black woman who formerly was a career Attorney–Advisor

for the U.S. Department of Health and Human Services ("DHHS"). During 1983–85, DHHS employed Lockhart in its Chicago Office of Hearings and Appeals for the Social Security Administration. In 1983 Lockhart filed two Equal Employment Opportunity ("EEO") complaints with DHHS. She charged in her first complaint, filed July 6, 1983, that DHHS had assigned her office space on the basis of her race and gender, and that DHHS had discriminated against her on the same grounds when it filled a vacancy in a supervisory position in April 1983. On August 8, 1983, Lockhart filed a second EEO complaint, charging discrimination in the filling of three additional supervisory vacancies. If the acts alleged in these complaints had been true, DHHS would have violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. (1982), as applied to federal employees through *id.*, § 2000e–16.

DHHS investigated Lockhart's 1983 complaints and decided that they were meritless. Lockhart appealed this decision to the Equal Employment Opportunity Commission's ("EEOC") Office of Review and Appeals. The EEOC affirmed the DHHS's ruling in 1986. Lockhart did not appeal the EEOC decision to a United States district court within the thirty-day period established by law, see *id.* at § 2000e–16(c), and so action on the substance of Ms. Lockhart's 1983 complaints is finished.

Finished, that is, unless DHHS retaliated against Lockhart for complaining—an action which is a separate violation of Title VII. See *id.* at § 2000e–3(a) (unlawful employment practice to discriminate against person because he or she has filed Title VII charges); *Judge v. Marsh,* 649 F.Supp. 770, 781–82 (D.D.C.1986) (applying § 2000e–3(a) to federal employees). In a pro se complaint filed in this court, Lockhart charges that DHHS retaliated soon after she filed her 1983 complaints. According to the complaint, these retaliatory actions prompted Lockhart to file a series of administrative charges and complaints beginning on October 1, 1984—charges that allegedly produced heightened retaliation.

According to records which DHHS has produced to this court, Lockhart filed four EEO complaints in late 1984 and early 1985.[1] The first complaint filed November 14, 1984, alleged that DHHS had discriminted against her in not promoting her to a supervisory position in October 1984. The second and third complaints, filed December 12, 1984, alleged that DHHS discriminated in charging her with being absent without leave for 30 minutes in October 1984, and in requiring her to file a formal request for additional leave in November 1984. The third complaint also claimed discrimination and reprisal in the agency's proposal to suspend Lockhart in November 1984. The final complaint, filed March 7, 1985, claimed discrimination and reprisal in the agency's supervision of Lockhart in January 1985 and in constructively discharging her effective March 30, 1985.

DHHS investigated Lockhart's 1984–85 complaints and proposed findings of no discrimination on all of them on December 12, 1986. Eight days later Lockhart requested a hearing before an EEOC Administrative Law Judge ("ALJ"). The hearing took place over April 4–6, 1988. Lockhart was represented by counsel at this hearing. In October 1988 the ALJ recommended a finding of no discrimination or reprisal against Lockhart. DHHS adopted the ALJ's recommendation on December 20, 1988, and gave Lockhart notice of its decision on January 14, 1989.

■ At this point Lockhart had a choice: she could have sought review with the EEOC within 20 days of receiving DHHS's decision, or else appealed to a federal district court. See 42 U.S.C.

---

1. In a brief filed in response to the government's pending motion Lockhart claims that she filed six complaints. She alleges that DHHS consolidated five of them and assigned four EEO administrative numbers to them. The fate of the sixth complaint is unknown. As will be discussed below, if the sixth complaint related to matters for which Title VII is the exclusive remedy, then Lockhart must pursue her Title VII remedies. If the complaint was not within the scope of Title VII, Lockhart may have to pursue other administrative remedies before presenting the complaint to this court.

§ 2000e–16(c); 29 C.F.R. § 1613.281 (1988).[2] Lockhart decided to do both. She appealed DHHS's adverse decision on her 1984–85 complaints to the EEOC on January 20, 1989, and filed a two-count suit in this court on February 15, 1989. Count 1 of her suit charges employment discrimination in violation of Title VII. Count 2 alleges that DHHS, Otis R. Bowen,[3] Francis J. O'Byrne, Michael Bernstein, and other DHHS employees[4] violated her rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution, as well as her constitutional right to privacy.[5]

■ The defendants have moved to dismiss both counts.[6] Lockhart's employer,

---

**2.** Neither 42 U.S.C. § 2000e–16(c) nor 29 C.F.R. § 1613.281 expressly provide that this is an either/or choice. Both provide for review by the district courts within 30 days of a final agency action, 30 days after EEOC review is complete, or 180 days after the complainant has filed her charge with either the agency or the EEOC but has received no decision. The frameworks of both the statute and the implementing regulation suggest, however, that one cannot appeal a final agency decision to the EEOC while simultaneously appealing that decision to the district court. If one could appeal simultaneously, the separate provisions for appeal 30 days after the EEOC has rendered a decision or 180 days after the EEOC has taken jurisdiction over the appeal would be meaningless. See *Sperling v. Donovan,* 31 FEP Cases 251, 252 (D.D.C.1983) (shortcutting EEOC review would erode Title VII's scheme for resolving discrimination claims of federal employees). This court thus interprets the law and the implementing rules as presenting the complainant with an either/or choice. See *Bastian v. Petren Resources Corp.,* 699 F.Supp. 161, 163 (N.D.Ill. 1988) (where plain meaning of statutory language and context of words used do not indicate statutory purposes clearly, proper to disregard that interpretation which would render the statute nugatory).

**3.** The defendants have asked this court to substitute Louis W. Sullivan, M.D., the new DHHS Secretary, for Otis R. Bowen in this suit pursuant to Rule 25(d)(1), Fed.R.Civ.P., on the assumption that Lockhart has sued Secretary Bowen in his official capacity only. Lockhart has indicated that she is suing Dr. Bowen in both his official and individual capacities. Dr. Bowen thus remains a party notwithstanding Secretary Sullivan's appointment.

**4.** Hereafter this court will refer to O'Byrne and Bernstein as the "United States." Under the Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub.L. 100–694, §§ 5–6, 102 Stat. 4564, codified in part at 28 U.S.C.A. § 2679(b), (d) (1989 supp.), the court must substitute the United States as the party defendant when the Attorney General certifies that a defendant employee of the United States "was acting within the scope of his office or employment at the time of the incident" out of which a claim arises. The Attorney General so certified O'Byrne and Bernstein on June 2, 1989. The Attorney General has not certified Dr. Bowen's status with respect to Lockhart's claims that Dr. Bowen is liable in his individual capacity.

**5.** In her brief in opposition to the defendants' motion, Lockhart indicated to the court that she wished to substitute the Thirteenth Amendment for her references to the Fourteenth Amendment. Lockhart did not move formally, however, for amendment of her complaint under Rule 15(a), Fed.R.Civ.P. Lockhart has not elaborated as to why she believes DHHS violated her rights under the Thirteenth Amendment, and a blanket substitution of one amendment for the other would render some of Lockhart's claims frivolous. The court will thus deny Lockhart's informal motion, and require her to file under Rule 15(a) if she so chooses to amend her complaint.

The same brief also asserts that DHHS violated her rights under 42 U.S.C. § 1981. Lockhart never mentions § 1981 in her complaint, and so if she wishes to bring a claim for a violation of § 1981, she will have to amend her complaint to reflect this claim. The court suggests, however, that Lockhart read the Supreme Court's decision in *Patterson v. McLean Credit Union,* —— U.S. ——, —— – ——, 109 S.Ct. 2363, 2372–79, 105 L.Ed.2d 132 (1989), before she seeks to amend her complaint in this manner.

**6.** On March 28, 1989, Lockhart filed a memorandum in opposition to the defendants' motion and moved for summary judgment. Lockhart's motion for summary judgment does not comply with Local Rule 12(*l*) of this district, which states as follows:

With each motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure the moving party shall serve and file, in addition to the affidavits (if any) and other materials referred to in Rule 56(e) and a supporting memorandum of law, a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law, including a description of the parties and all facts supporting venue and jurisdiction in this court. That statement shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the reord, and other suporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a state-

DHHS, first argues that Lockhart may not seek review of her 1983 complaints in this court, as Lockhart did not appeal the EEOC's 1986 ruling on those complaints within 30 days. Lockhart replies that she does not wish to relitigate the substance of the 1983 complaints, but rather, she wishes to use them to explain DHHS's motive for harming her. Retaliation was the subject of at least two of her 1984–85 complaints, and as noted above, retaliation against someone who has filed a Title VII charge is itself a violation of Title VII. Whether one can challenge an adverse ruling does not prevent that person from using the fact of the charge which prompted that ruling in a later complant of illegal retaliation. The fact of the initial complaint is a logical prerequisite of a charge of unlawful employment practices under 42 U.S.C. § 2000e–3, and Lockhart is entitled to allege and prove this fact.

■ DHHS's second argument is that Lockhart could not have appealed DHHS's decision on her 1984–85 complaints both here and before the EEOC, and thus this court lacks jurisdiction over them. While DHHS's argument had merit at the time Lockhart filed her complaint, see note 2 above, DHHS was done in by the efficiency of the EEOC. DHHS notified the EEOC's Office of Review and Appeals on March 6, 1989 of Lockhart's filing here; before this court had a chance to decide whether the federal courts have jurisdiction over Lockhart's appeal, the EEOC dismissed Lockhart's EEOC appeal on April 4, 1989. Lockhart has only one appeal now, as Title VII and the EEOC's regulations allow. This court thus has jurisdiction over Lockhart's appeal of her 1984–85 EEO complaints, and thus DHHS's motion to dismiss Count 1 is denied.

The defendants next ask this court to dismiss Count 2 for not stating a claim upon which this court can grant relief. Count 2, as noted earlier, seeks relief for various constitutional infractions. While there is no federal constitutional or statutory provision which expressly allows per-

sons to sue federal officers for such infractions, the Supreme Court has determined that certain constitutional rights imply a remedy of private suit. As the Court announced this rule in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), these implied rights of action to redress constitutional violations have become known as *"Bivens* suits."

■ Notwithstanding the rule announced in *Bivens*, a person does not have the right to file a *Bivens* action any time a federal officer violates the Constitution. As the Court noted in *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), the victim of a federal officer's constitutional wrong does not have a private right of action when "Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective," *id.* at 18–19, 100 S.Ct. at 1471 (emphasis in original), or when "'special factors'" counsel "'hesitation in the absence of affirmative action by Congress.'" *Id.* at 18, 100 S.Ct. at 1471, quoting *Bivens*, 403 U.S. at 396, 91 S.Ct. at 2004.

The defendants contend that both of *Carlson's* limitations on *Bivens* suits are present here. They direct the court's attention to *Brown v. GSA*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976), where the Supreme Court held that Title VII and the procedures it contains in 42 U.S.C. § 2000e–16(c) were "the exclusive judicial remedy for claims of discrimination in federal employment." *Brown* teaches this court to look closely at Count 2, for if Lockhart states claims for discrimination in her employment, Title VII bars them; if her constitutional claims do not relate to employment discrimination, Title VII has no effect on them. See *Ethnic Employees of Library of Congress v. Boorstin*, 751 F.2d 1405, 1414–16 (D.C.Cir.1985) (collecting cases demonstrating limits of Title VII preemption of constitutional claims of federal employees).

Accordingly, the court denies Lockhart's motion for summary judgment, without prejudice.

ment constitutes grounds for denial of the motion.

Count 2 contains three types of claims: two which Title VII preempts, several which Title VII might preempt, and one which Title VII does not preempt. In ¶ 18 of her Complaint, Lockhart claims that the defendants denied her equal protection of the laws in failing to promote her from April 1983 to September 1984. In ¶ 25 she claims the defendants denied her equal protection in processing her complaints. A denial of equal protection, however, in relation to hiring, firing, compensation, terms, conditions, or privileges of employment is a violation of Title VII, when the denial is based on race, color, religion, gender, or national origin. See 42 U.S.C. § 2000e–2(a)(1). It would be unreasonable to infer from Lockhart's complaint that she alleges discrimination on some ground other than these, and so this court concludes that Title VII preempts a *Bivens* remedy for Lockhart's claims of denial of equal protection.

Examples of the second category of claims, those which Title VII might preempt, are found in ¶¶ 18–21 and 23–25 of the Complaint. In these paragraphs Lockhart claims that the defendants denied her due process, violated her rights under the First and Fourth Amendments, and infringed on her right to privacy. Standing alone, these claims are not ones of discrimination. Title VII could interrupt Lockhart's prosecution of them, however, if she contends the defendants deprived her of these rights in retaliation for her filing discrimination charges. This would state a claim under Title VII, and Title VII would be Lockhart's exclusive remedy. At this stage of the pleadings, however, the court cannot reasonably exclude the possibility that the defendants infringed these rights for reasons other than Lockhart's filing of discrimination charges. Title VII thus will not preclude a *Bivens* action for these violations at this time.

The sole example of the third type of constitutional claim which Lockhart brings in Count 2 is found in ¶ 22 of the Complaint. There Lockhart claims that the United States violated her right to privacy when Bernstein and O'Byrne threatened her with warnings, reprimands, and discharge. Unlike the claims examined above, this claim alleges the motive for Bernstein and O'Byrne's act: Lockhart's failure to provide them with "private information to which they were not entitled." This is not a motive which converts an alleged constitutional wrong into a Title VII claim, as it does not suggest retaliation for the filing of a Title VII charge. Title VII thus will not preclude the *Bivens* claim put forth in ¶ 22.

Title VII hence bars some, but not all, of Lockhart's *Bivens* claims in Count 2. The defendants suggest nevertheless that there are "special factors" that counsel against implying *Bivens* remedies in this situation, in the absence of affirmative action by Congress. The defendants base their argument in large part on *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). There the Court held that a federal civil service employee did not have a *Bivens* remedy for a claim of a violation of his rights under the First Amendment, notwithstanding that his civil service remedies were not as effective as damage remedies and could not fully compensate him for the harms he allegedly suffered. The Court noted that Congress had recognized the conflict among the Government's interest in managing its employees, an employee's interest in job security, and the employee's rights under the First Amendment. Congress's consideration had resulted in many legislative efforts, Executive Orders, and administrative regulations. These efforts created an "elaborate, comprehensive scheme" that encompassed "substantive provisions forbidding arbitrary actions and procedures—administrative and judicial— by which improper action" could be redressed. This comprehensive scheme convinced the Court that it would be unwise to create a *Bivens* remedy for violations of the First Amendment rights of federal employees, absent affirmative direction from Congress. *Id.* at 380–90, 103 S.Ct. at 2412–18.

The defendants argue that *Bush* stands for the proposition that federal employees do not have a *Bivens* remedy for

constitutional wrongs committed while the employee is on the job. While this may be the ultimate, practical effect of *Bush* upon this case, *Bush* does not stand for the blanket proposition urged by the defendants. As *Carlson* and *Bush* make clear, the presumption of the federal common law is that *Bivens* remedies are available for violations of the Constitution committed by federal officers. See *Carlson*, 446 U.S. at 18, 100 S.Ct. at 1471; *Bush*, 462 U.S. at 374–78, 103 S.Ct. at 2409–12. The exceptions to *Bivens* are just that: exceptions. As they are exceptions, it is the burden of the party claiming them—here, the defendants—to demonstrate that they apply. That much is clear from *Carlson*, see 446 U.S. at 18, 100 S.Ct. at 1471 (*Bivens* cause of action "may be defeated" when defendants demonstrate applicability of two exceptions), and the Seventh Circuit's cases applying the *Bivens* exceptions. In the pre-*Bush* case of *Sonntag v. Dooley*, 650 F.2d 904 (7th Cir.1981), a curator of a federally operated Army museum sued her supervisors for denying her procedural due process in forcing her to retire. The defendants moved to dismiss, arguing in part that the curator lacked a *Bivens* remedy. The district court granted the defendants' motion, but the Seventh Circuit reinstated her claim on appeal. The court noted that the defendants had failed to demonstrate either how Congress provided an alternative remedy for the curator's claims or what special factors counselled hesitation. *Id.* at 907.

While the *Sonntag* court's assessment of the curator's claim may be incorrect in light of *Bush*, its allocation of the burden of proof remains the law. That much was demonstrated in *Moon v. Phillips*, 854 F.2d 147 (7th Cir.1988). There a former employee of the Internal Revenue Service sued his supervisors, claiming a violation of his constitutional rights of free speech and denial of equal protection of the laws. The defendants moved to dismiss the employee's claims under Rule 12(b)(6), Fed.R.Civ.P., and demonstrated that the employee had an administrative remedy for his claims through the Merit Systems Protection Board. See *id.* at 149, 151–52. The district

court dismissed the employee's *Bivens* claims on this ground, and the Seventh Circuit affirmed. The court indicated the importance of a showing of an alternative remedy through its analysis of several cases, including *Bishop v. Tice*, 622 F.2d 349 (8th Cir.1980); *Egger v. Phillips*, 710 F.2d 292 (7th Cir.1983); and *Williams v. I.R.S.*, 745 F.2d 702 (D.C.Cir.1984). The court distinguished *Bishop* by noting that the plaintiff in *Bishop* alleged that the defendants had blocked all access to administrative remedies. It distinguished *Egger* and *Williams* by noting that the plaintiffs there were exempt from civil service protection, and thus had no administrative remedy. The Seventh Circuit also noted *Bush's* additional leeway for the *Bivens* actions of federal employees when the employee alleges violations that fall outside of administrative remedies. See *Moon*, 854 F.2d at 149–52.

The defendants' claim that Lockhart has no *Bivens* remedies is thus unavailing, at least for now. Nowhere do the defendants demonstrate that Lockhart has alternative administrative remedies for the constitutional violations she claims. This court will follow the lead of the Seventh Circuit in *Moon* and give special scrutiny to any *Bivens* action brought by a federal employee, but until the defendants demonstrate *specific* factors counselling hesitation—for example, Lockhart's exact administrative remedies—this court will continue to entertain some of Lockhart's *Bivens* claims.

This court denies Lockhart's motion for summary judgment for failure to comply with Local Rule 12(*l*). The court substitutes the United States for defendants O'Byrne and Bernstein. The defendants' motion to dismiss Count 1 is denied, and their motion to dismiss Count 2 is granted only with respect to Lockhart's claims of denial of equal protection.